USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/12/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                             :

CARRIE WILLIAMS,                             :

                              Plaintiff,               :          16-CV-3691 (JMF)

                  -v-                           :          OPINION AND ORDER

NEW YORK CITY DEPARTMENT OF HEALTH AND  :
MENTAL HYGIENE,                          :

                            Defendant.            :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Carrie Williams brings employment discrimination claims against her former employer, the New York City Department of Health and Mental Hygiene (the "DHMH"), pursuant to the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* Specifically, Williams claims that the DHMH discriminated against her on the basis of her disability and then retaliated against her after she filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"). (*See* Docket No. 1 ("Complaint")). Williams and the DHMH now cross-move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. (Docket Nos. 30, 38). For the reasons discussed below, the DHMH's motion is GRANTED, Williams's motion is DENIED, and the Complaint is DISMISSED.

**BACKGROUND**

The relevant facts, taken from the Complaint and admissible materials submitted in connection with the pending motions, are either undisputed or described in the light most favorable to Williams. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Williams worked for the City of New York from October 25, 1987, until her retirement on March 7, 2016. (Docket No. 31 ("Williams Decl."), at ¶ 4). In September 2002, Williams was hired by the DHMH as a Public Health Nurse Level II in the Bureau of Tuberculosis Control. (*Id.* ¶ 5). The Bureau of Tuberculosis Control maintains four health centers: the Fort Greene Chest Center, the Washington Heights Chest Center, the Corona Chest Center, and the Morrisania Chest Center. (*Id.* ¶ 8). In 2003, Williams assumed the responsibilities of Patient Care Manager, and in 2004, she was assigned the title of Public Health Nurse Level III. (*Id.* ¶¶ 6-7). Williams was assigned to work primarily at the Fort Greene Chest Center, but she occasionally worked at the Washington Heights Chest Center as well. (*Id.* ¶ 10).

In or about May 2013, Williams was diagnosed with herniated lumbar discs, arthritis of the spine and knees, and sciatica; she also suffered from gout and diabetic neuropathy, chronic conditions that she had previously developed. (*Id.* ¶¶ 16-17; *see also* Williams Decl., Ex. 2 ("2015 Tambor Letter")). As a result of these challenges, Williams's doctor, Jeffry Tambor, opined that she was "unable to stand longer than 2-3 minutes and . . . to walk greater than 80 feet without stopping." (2015 Tambor Letter). In the fall of 2013, Williams informed her supervisor, Errol Robinson, that she had a medical condition. (*See* Docket No. 32 ("Sackowitz Decl."), Ex. 1 ("Robinson Depo."), at 27). According to Williams, her initial treatment plan was ineffective, and her pain management doctor recommended that she undergo surgery. (Williams Decl. ¶¶ 22-23; *see also* Docket No. 39 ("Murrell Decl."), Ex. E, at 3-32). Prior to the surgery,

Williams was granted leave from the date of her surgery (January 15, 2015), until her expected return date (June 2, 2015). (*See* Murrell Decl., Ex. G).

On May 19, 2014, before Williams began her medical leave, one of the laboratory associates she supervised at the Fort Greene Chest Center — Sofiya Mazuryan — filed a charge of discrimination against the DHMH with the EEOC. (*See* Williams Decl. ¶¶ 32-33; Sackowitz Decl., Ex. 5 ("Mazuryan Charge")). Significantly, Mazuryan specifically — and exclusively — complained about Williams, claiming that she had treated Mazuryan "less favorably than the other non-white employees she supervise[d]." (Mazuryan Charge). On December 8, 2014, the EEOC issued its final determination, concluding that Mazuryan was, in fact, "treated less favorabl[y] than non-white employees and subjected to retaliation after she complained of discrimination." (Murrell Decl., Ex. N ("EEOC Proceedings"), at 59-60). To resolve the charge, the EEOC recommended, among other remedies, that the DHMH "transfer Ms. Carrie Williams from the Fort Greene location" so that Mazuryan would "no longer be under the direct or indirect supervision of Ms. Williams." (*Id.* at 61).

On January 5, 2015, apparently unaware "that the [DHMH] had decided to transfer [her]," (Williams Decl. ¶ 47), Williams submitted a "Request for Reasonable Accommodation" to her supervisor (Williams Decl., Ex. 1 ("First RFRA")). According to Williams, she "feared that while [she] was out on medical leave the [DHMH] might transfer [her] to the Corona and Morrisania locations." (Williams Decl. ¶ 47). Citing her herniated discs, arthritis, sciatica, gout, and diabetic neuropathy, Williams requested that she remain primarily at the Fort Greene Chest Center and that she be assigned a parking space. (First RFRA). Two days later, one of Williams's supervisors informed her that she was to be reassigned from the Fort Greene Chest Center to the Corona and Morrisania centers. (Williams Decl., Ex. 6).

3

In March 2015, while Williams was still out on leave, she filed a second Request for Reasonable Accommodation, advising the DHMH that she was ready to return to work on April 13, 2015, and seeking again to remain at the Fort Greene Chest Center. (Williams Decl., Ex. 7 ("Second RFRA")). She noted that "[d]riving a car longer than one hour causes back and leg pain" and that transfer to the Morrisania or Corona offices would be infeasible because the commute between her home on Staten Island and either site would exceed two hours. (*Id.*). Shortly thereafter, Williams informed the DHMH that her medical leave would be extended to June 1, 2015. (Sackowitz Decl., Ex. 9, at 1). In light of that extension, the DHMH advised Williams that her Request for Reasonable Accommodation was "moot" and that if she needed an accommodation "on or about June 2, 2015," she should submit a new request at a later date. (Williams Decl., Ex. 9 ("April 14 E-mail")).

On May 1, 2015, Williams submitted her third Request for Reasonable Accommodation, seeking the same relief that she had sought in her prior two requests. (Williams Decl., Ex. 11 ("Third RFRA")). In her third request, Williams reported that she could neither drive a car longer than an hour nor take public transportation. (*Id.*). Williams also advised that she was able to return to work sooner than expected — on May 11, 2015 — so long as she was not required to report to the Corona or Morrisania clinics. (*Id.*). Errol Robinson, her supervisor, responded by informing Williams that she should report to the Corona Chest Center on May 11, 2015. (Williams Decl., Ex. 14). A week later, when Williams had still not reported to the Corona location, Jewel Jones, the DHMH's EEO Investigator, e-mailed Williams requesting her attendance at a meeting the following day to discuss Williams's accommodations. (Williams Decl., Ex. 15). Williams contacted her union representative, Judith Arroyo, who was unable to

4

make the meeting on such short notice. (Williams Decl., Ex. 16). The meeting did not take place. (Williams Decl. ¶¶ 85-86).

On May 29, 2015, Williams e-mailed Jones, reminding the latter that she was able to return to work. (Williams Decl., Ex. 16). Having not heard back from Jones by June 2, 2015 — the day Williams was to return to work — Williams initiated a complaint of discrimination with the EEOC. (Williams Decl., Ex. 20). On June 5, 2015, James Hallman, the DHMH's Chief Diversity and EEO Officer, e-mailed Williams and scheduled a meeting for June 12, 2015. (Williams Decl., Ex. 16; *see* Williams Decl. ¶ 93). At that meeting, attended by several DHMH supervisors, the DHMH offered Williams a proposed accommodation: Williams could become a "Nurse Coordinator" at the "Gotham Center," a Long Island City facility. (Williams Decl., Ex. 18; *see* Williams Decl. ¶¶ 93-94). Williams rejected the proposal in an e-mail four days after the meeting, stating that commuting to the Gotham Center would require her "to drive more than one hour" and that the job responsibilities of Nurse Coordinator would require her to visit all four tuberculosis clinics. (Williams Decl., Ex. 22 ("June 16, 2015 E-mail")). In response, the DHMH argued that transit from Staten Island to the Gotham Center would take less than an hour and that visits from the Gotham Center to other facilities would not be required "every day or every week." (Williams Decl., Ex. 25 ("June 23, 2015 E-mail")). Jones also advised Williams that she could use public transportation or the Access-A-Ride service. (*Id.*). On June 25, 2015, Williams responded by e-mail, confirming that she would not accept the Nurse Coordinator role and disputing the DHMH's transportation calculations. (Williams Decl., Ex. 30 ("June 25, 2015 E-mail")).

In that same e-mail, Williams also disclosed to Jones that she had filed a charge with the EEOC. (*Id.*). Jones responded by seeking further information about the charge, eventually

5

telling Williams that the DHMH would close the request-for-reasonable-accommodations (or "RFRA") process if she did not provide information about her EEOC complaint. (*See* Williams Decl., Ex. 33 ("July 16, 2015 E-mail")). Williams did not provide the information, and, on July 20, 2015, the DHMH closed Williams's matter because of her "failure to participate in the reasonable accommodation interactive process." (Williams Decl., Ex. 35 ("July 20, 2015 E-mail")). Further, by letter dated July 28, 2015, the DHMH informed Williams that she had been referred for disciplinary charges because of her failure to return to work on July 14, 2015 (the date to which Williams's leave of absence had been extended) and because she had "failed to follow up" on her request for reasonable accommodation. (Williams Decl., Ex. 36; *see id.*, Ex. 23). Several months later, on February 23, 2016, the DHMH sent Williams a Notice and Statement of Charges, charging her with being absent from her work location. (Williams Decl., Ex. 37 ("Notice and Statement of Charges")). Williams resigned from the DHMH on March 7, 2016. (Williams Decl. ¶ 178). This lawsuit followed.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial,

6

the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment

7

must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Williams brings discrimination and retaliation claims under the ADA, NYSHRL, and NYCHRL. (*See* Complaint ¶¶ 98-154). The Court begins with her federal claims.

### A. Disability Discrimination

It is well established that "discrimination" under the ADA includes a failure to provide an employee with a reasonable accommodation for his or her disability. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 183-84 (2d Cir. 2006). Discrimination claims under the ADA are, like race discrimination claims under Title VII of the Civil Rights Act, analyzed using the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McDonnell v. Schindler Elevator Corp.*, No. 12-CV-4614 (VEC), 2014 WL 3512772, at *4 (S.D.N.Y. July 16, 2014). To establish a *prima facie* case of discrimination based on a failure to accommodate, and thus shift the burden to the defendant to articulate a legitimate, non-discriminatory reason for its conduct, a plaintiff must show by a preponderance of the evidence "that (1) plaintiff is a person with a disability under the . . . ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).

Significantly, "[t]he ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000) (quoting

8

29 C.F.R. § 1630.2(o)(3)). The mere failure to engage in the interactive process is not, however, an "independent violation of the ADA." *Nazario v. Promed Pers. Servs. NY Inc.*, No. 15-CV-6989 (LGS), 2017 WL 2664202, at *7 (S.D.N.Y. June 19, 2017). Instead, a court must follow "a two-step process to evaluate whether the failure to provide a proposed accommodation constitutes a violation of the ADA. First, the plaintiff bears the burden of proving that an accommodation exists that permits her to perform the job's essential functions. If the plaintiff meets that burden, the analysis shifts to the question whether the proposed accommodations is reasonable; on this question the burden of persuasion lies with the defendant." *Jackan*, 205 F.3d at 566 (internal quotation marks and ellipsis omitted). Critically, if an employee "cannot show that a reasonable accommodation existed at the time of his [or her] dismissal," the employee cannot recover. *McElwee v. Cty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012).

Applying those standards here, Williams's ADA discrimination claims fail as a matter of law for a simple reason: The accommodation she demanded was unreasonable. In all three of her RFRAs, Williams made the same demand: that she be reassigned back to the Fort Greene facility from the Morrisania and Corona clinics. But it is undisputed that DHMH reassigned Williams from that facility in order to separate her from Mazuryan after the EEOC found that Williams had discriminated against Mazuryan on the basis of her race. (*See* EEOC Proceedings 65-66). Contrary to Williams's argument, it is immaterial that the DHMH disputed the EEOC's finding that Williams discriminated against Mazuryan "on the basis of her race, national origin and participation in a protected activity." (Docket No. 46 ("Pl.'s Reply Mem."), at 9; *see* EEOC Proceedings 65). The fact that the EEOC's recommended remedy "was not binding" on the DHMH is similarly irrelevant. (*Id.*). The undisputed fact is that there was a serious "personality conflict between [Mazuryan] and Ms. Williams" that was "exacerbated by Ms. William[s']

9

seemingly unpleasant managerial style." (EEOC Proceedings 65). And separating Williams and Mazuryan at the Fort Greene Chest Center "was not feasible," as it was a small facility. (Def.'s Mem. 15). Given those undisputed facts, Williams's proposed accommodation was not reasonable as a matter of law. *See, e.g.*, *Diaz v. City of Phila.*, 565 F. App'x 102, 106 (3d Cir. 2014) (finding that proposed accommodation was "not necessarily reasonable in light of the . . . conflict with a coworker"); *cf. Gordon v. Runyon*, No. 93-CV-0037 (JRP), 1994 WL 139411, at *5 (E.D. Pa. Apr. 21, 1994) (holding that a proposed accommodation was not reasonable where the employer "could not insulate Plaintiff from coworkers"), *aff'd*, 43 F.3d 1461 (3d Cir. 1994).

Williams's remaining arguments with respect to the reasonableness of her proposed accommodation also lack merit. The bulk of those arguments concern the DHMH's behavior during the interactive process. For example, Williams takes issue with the DHMH's "refusal to substantively communicate with Plaintiff about either her first or second RFRA." (Pl.'s Mem. 16). But the law in this Circuit is clear that "an employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed at the time of his dismissal." *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir.), *cert. denied*, 138 S. Ct. 359 (2017) (citation and internal quotation marks omitted). Williams also claims, for the first time in her memorandum of law opposing the DHMH's cross-motion, that the DHMH had "identified a vacancy within the Bureau of STD Control and Prevention" and "explored [that vacancy] as a potential accommodation." (Pl.'s Reply Mem. 9). But "an employer cannot refuse to make an accommodation that it was never asked to make." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18-19 (2d Cir. 2015) (internal quotation marks, citation, and brackets omitted). And there is no dispute that Williams never requested

that accommodation — her only request was to be re-assigned back to Fort Greene.[1] Finally, Williams's criticisms of *the DHMH's* proposed accommodations are irrelevant: It is she, not the DHMH, who bears the burden of demonstrating the reasonableness of *her* proposed accommodation in the first instance. *See McElwee*, 700 F.3d at 642 ("[A]n employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed at the time of his dismissal."); *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 101 (2d Cir. 2009) ("The employer's failure to engage in such an interactive process, however, does not relieve a plaintiff of her burden of demonstrating, following discovery, that some accommodation of her disability was possible."). As Williams does not meet that burden, summary judgment must be and is granted to the DHMH on her discrimination claims under the ADA.

**B. Retaliation**

Next, Williams claims that the DHMH impermissibly retaliated against her for engaging in protected activity under the ADA. (Compl. ¶¶ 109-16). Retaliation claims under the ADA are also subject to the burden-shifting framework of *McDonnell Douglas*. *See Paxton v. Fluor Enters., Inc.*, No. 15-CV-3737 (DLC), 2017 WL 875856, at *5 (S.D.N.Y. Mar. 3, 2017). To state a *prima facie* case of retaliation under the ADA, a plaintiff "must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took some adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313

---

[1] Moreover, even if Williams had requested assignment to the Bureau of STD Control and Prevention, the DHMH's explanation for why that accommodation would have been unreasonable — that "moving plaintiff . . . would have resulted in a vacancy within TB Control that would not have been filled," (Def.'s Mem. 16) — is adequate.

F.3d 713, 719 (2d Cir. 2002); *see also* 42 U.S.C. § 12203(a). "Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Treglia*, 313 F.3d at 721 (citation and internal quotation marks omitted). The plaintiff "has the ultimate burden of showing that the proffered reasons are a pretext for retaliation [under the ADA]." *McDonald v. City of New York*, 786 F. Supp. 2d 588, 613 (E.D.N.Y. 2011).

Applying those standards here, the Court concludes that the record does not support Williams's retaliation claims. As an initial matter, Williams identifies two allegedly adverse employment actions: the DHMH's "refusal to provide [her] with a reasonable accommodation" and "her effective termination." (Pl.'s Mem. 21). The second, however, can be traced back to the first, as Williams resigned rather than face disciplinary charges for her undisputed absenteeism, (Williams Decl. ¶ 180), and she stopped going to work because the DHMH had denied her Third RFRA, (Williams Decl. ¶ 172). Thus, Williams's claims turn on whether she can prove that the DHMH denied her Third RFRA in retaliation for her filing an EEOC complaint.[2] She cannot. Even assuming that Williams has met her *prima facie* burden, the

---

[2]   In any event, considering Williams's "effective termination" claim independently would not change the Court's conclusion. The record supports the DHMH's claim that Williams's "absenteeism" — that is, her failure to work for months — led to her termination. (Def.'s Mem. 19; *see also* Notice and Statement of Charges 5 (advising Williams that she "violated [a] Standards of Conduct Rule" because she was "absent from [her] work location without authorization from July 14, 2015 through [February 23, 2016]")). That is plainly a legitimate, non-discriminatory reason for termination, and Williams points to no evidence that it was pretext for retaliation. *See, e.g.*, *Best v. Duane Reade Drugs*, No. 14-CV-2648 (CM), 2017 WL 218251, at *5 (S.D.N.Y. Jan. 11, 2017) (finding the "history of Plaintiff's absences" to be a legitimate, non-discriminatory reason for her termination and granting summary judgment to the employer where there was "no evidence to suggest that this rationale was pretext").

DHMH has proffered a legitimate, non-discriminatory reason for denying her Third RFRA: her failure to participate in the reasonable accommodation process, as manifested in her refusal to provide basic information about her EEOC filing to Jones. Under New York City's "Equal Employment Opportunity Policy," when an agency is made aware of a complaint filed with the EEOC, the agency EEO Officer is supposed to transfer the matter to the agency General Counsel. (Sackowitz Decl., Ex. 16 ("EEO Policy"), at 11). As the DHMH explained, the purpose of the policy is to permit the agency General Counsel to determine which entity — the agency itself or the law department — should respond to the EEOC action. (*See* Murrell Decl., Ex. I, at 71; *see also* Def.'s Br. at 22 (explaining that the policy enables the DHMH "to defend itself more efficiently and effectively by localizing all decision-making regarding the [DHMH]'s defense against plaintiff's EEOC Charge as well as the resolution of her [RFRA] in the General Counsel's office")). In furtherance of that policy, the DHMH requested that Williams provide the date on which she had filed her charge. Williams — inexplicably — refused to comply.

The failure to comply with the DHMH's minimal request and, thus, to participate in the reasonable accommodation process is a legitimate and non-retaliatory reason for closing Williams' Third RFRA. *See, e.g.*, *Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, No. 13-CV-1528 (LEK), 2017 WL 2870502, at *11 (N.D.N.Y. July 5, 2017) (holding that the defendant's justification for its adverse action against the plaintiff — that it was "more efficient" — was legitimate and non-retaliatory). The burden thus shifts to Williams to demonstrate that the proffered justification was "merely a pretext for impermissible retaliation." *Treglia*, 313 F.3d at 721. The evidence falls well short of that standard. Indeed, Williams does not identify any evidence (and the Court does not discern any evidence) even suggesting pretext. On top of that, for the reasons discussed above, the record is also clear that Williams's sole

13

proposed accommodation was unreasonable as a matter of law. As a result, the DHMH denied Williams's Third RFRA and, after she had failed to return to work for months, initiated a disciplinary proceeding against her. Accordingly, summary judgment is also granted to the DHMH on Williams's retaliation claims under the ADA.

**C. State-Law Claims**

Having dismissed Williams's federal claims, the Court must decide whether to exercise supplemental jurisdiction over her claims under the NYSHRL and NYCHRL. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The statute does not create "a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial," as here, "the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*; *see also Kolari v. N. Y. Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state-law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." (citing cases) (internal quotation marks omitted)).

Despite the general presumption, the Court concludes that, in the interest of judicial economy, it should exercise supplemental jurisdiction over Williams's NYSHRL claims. That is because, for purposes of this case, there are no material differences between the ADA and the NYSHRL. *See, e.g.*, *Graves*, 457 F.3d at 184 n.3 (explaining that the standards applicable to claims under the NYSHRL and under the ADA are the same). Given that and the Court's decision on Williams's ADA claims, it would be inefficient, and risk inconsistency, to defer a decision on her NYSHRL claims to a state court; instead, those claims are dismissed for the reasons the ADA claims were dismissed. By contrast, the Court declines to exercise supplemental jurisdiction over Williams's claims under the NYCHRL, which are subject to a different standard and must be analyzed separately. *See, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (noting that NYCHRL claims "require[] an independent analysis"). In light of that, and because the law governing claims under the NYCHRL is still developing, Williams's NYCHRL claims present questions "best left to the courts of the State of New York." *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 92-93 (2d Cir. 2011) (summary order) (affirming dismissal of the plaintiff's federal claims and declining to decide his claims under state and city law on the ground that they were "arguably governed by different legal standards" and the relevant law of New York was "still developing"); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (declining to reach the question whether the plaintiff had a valid claim under the NYCHRL after dismissing his federal claim). Accordingly, Williams's NYCHRL claims are dismissed, but without prejudice to her refiling them in state court.

## CONCLUSION

For the reasons stated above, the DHMH's motion for summary judgment is granted, and Williams's claims are dismissed, albeit without prejudice to her refiling her claims under the NYCHRL in state court. It follows that Williams's cross-motion for summary judgment must be and is denied. The Clerk of Court is directed to terminate Docket Nos. 30 and 38, to enter judgment in the DHMH's favor, and to close this case.

SO ORDERED.

Date: March 12, 2018
New York, New York

JESSE M. FURMAN
United States District Judge